Filed 3/10/22  P. v. Pereles CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049218 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 186103) |
| v. | |
| EDDY JAY PERELES, | |
| Defendant and Appellant. | |

## I.    INTRODUCTION

In 1997, a jury convicted defendant Eddy Jay Pereles of first degree murder (Pen. Code, § 187),[1] conspiracy to commit robbery (§ 182, subd. (a)(1)), and second degree robbery (§§ 211, 212.5, subd. (b)).  The jury found true the special circumstance allegation that defendant committed the murder during a robbery (§ 190.2, subd. (a)(17)), and the allegation that a principal was armed with a firearm (§ 12022, subd. (d)) during the commission of the murder and the robbery.  The superior court sentenced defendant to life without the possibility of parole, with a consecutive two-year term for the arming enhancement associated with the murder count.  In 2000, this court ordered a restitution fine stricken and affirmed the judgment in case No. H018342.[2]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] This court took judicial notice of the opinion in case No. H018342 by separate order.  (See Evid. Code, § 452.)

Defendant subsequently filed a petition for writ of habeas corpus, contending that there was insufficient evidence to support the felony-murder special circumstance finding under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*). The superior court denied the petition in 2017, concluding that defendant's conduct supported the felony-murder special circumstance finding in light of the factors discussed by the California Supreme Court in *Banks* and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

In 2021, defendant filed a petition for resentencing pursuant to section 1170.95, which was enacted by the Legislature through its passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437). (Stats. 2018, ch. 1015, § 4.) As relevant here, section 1170.95 allows individuals convicted of felony murder to petition the superior court to vacate the conviction under recent changes to the law that limited the scope of the felony murder rule to individuals who were major participants in the underlying felony and acted with reckless indifference to human life. The superior court denied the petition, finding that "readily ascertainable facts from the record demonstrate that [defendant] is ineligible for relief as a matter of law," based on the jury's felony-murder special circumstance finding and the superior court's denial of defendant's habeas petition.

Defendant challenges the denial of his section 1170.95 petition, contending that the superior court erred because it relied on the record of conviction to deny the petition without first appointing counsel. Defendant further contends that the court erred in relying on the habeas ruling to deny the section 1170.95 petition, as the habeas petition was "summarily denied" and required a higher showing to establish a prima facie case. The Attorney General concedes that the superior court should have appointed defendant counsel but contends that the error was harmless because the record establishes that defendant is ineligible for section 1170.95 relief as a matter of law "based on the undisturbed special circumstance finding."

2

For reasons that we will explain, we conclude that the trial court erred when it denied the petition without appointing defendant counsel but that the error was harmless. Accordingly, we affirm.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Factual Background*[3]

### 1.  Robbery and Murder of David Liu

On November 13, 1994, Stanford graduate student David Liu died from a single gunshot wound.  The .22-caliber bullet entered his back and perforated his aorta, lung, and liver.  The shooting occurred in front of an apartment complex on Tanland Drive in Palo Alto.  Defendant was a former resident of the apartment complex.

Shortly before Liu was shot, a high school student saw two Black men standing next to his car, which was in the parking area of the apartment complex.  The student greeted the men, and one of them commented that the student appeared to be scared.  One of the men was wearing a baseball cap; the other was wearing a Raiders jacket.  One was short (about 5'8" or 5'9") and chubby; the other was tall (about 6'2" or 6'3") and skinnier.  The student helped the police make a sketch of the shorter man, whom he subsequently identified as Larry Paul.  Evidence at trial established that defendant, who is Black, was 6'2" to 6'3" tall and weighed between 150 and 155 pounds.

An 18-year-old living on the second floor of the Tanland apartment complex heard scuffling outside on the night of November 13, 1994.  He looked out his window and saw Liu lying face down on the ground in front of a car.  Two Black men were nearby: one was standing above the victim; the other was crouched down or kneeling.  The standing man was holding a wallet and keys.  He was kicking the victim.  The crouching man was looking around.  The standing man was about 6 feet tall, had very short hair, and was

---

[3] The factual background is a summary of the facts stated in this court's opinion in case No. H018342.

wearing a Raiders jacket. The crouching man was holding a gun and wearing a hat or a hood.

After the two men left, the 18-year-old went outside. He saw that Liu had been shot. He placed Liu on his side to let blood drain from his mouth, then ran to a nearby apartment, where he told the residents to call 9-1-1.

### 2. Robbery of Sergio Barajas

On October 22, 1994, a few weeks before the Liu robbery/homicide, Sergio Barajas was assaulted and robbed in front of a video store on University Avenue in East Palo Alto. Police found Barajas bleeding from a head wound. Barajas claimed two Black males had attacked and robbed him after he had parked his car.

Police investigated the Barajas robbery and the Liu robbery/homicide as one of a series of similar robberies. During their investigation, they obtained information linking Paul and defendant to some of the robberies. The police discovered Paul's bloody clothing in A.L.'s[4] apartment.

### 3. Defendant's Police Interviews

San Mateo County Sheriff's deputies went to defendant's residence on January 10, 1995, and defendant agreed to come to the Hall of Justice, where he was placed in an interview room and *Mirandized*.[5]

Defendant was first questioned about the Barajas robbery. Defendant indicated that he knew about the robbery, but repeatedly denied involvement, claiming that he was at his mother's house all day. Defendant stated that Paul told him that the police were looking for them both.

After a break in the interview, defendant told the officers about his involvement in a robbery on Woodland Avenue in East Palo Alto. He explained that he and Paul had

---

[4] Pursuant to California Rules of Court, rule 8.90(b)(10), we refer to A.L. by her initials.

[5] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

been standing outside of their friend A.L.'s house when a car stopped in front of them. Paul approached the car, and the two men in the car indicated they wanted drugs. Paul went into the house and obtained some soap that had been chopped up to resemble narcotics. He gave it to the men in the car and the men gave him money. As Paul walked away, one of the men got out of the car and followed him, saying, "[C]ome here, come here, this ain't real." Paul turned around and hit the man with his fist, causing the man to fall onto the car and then onto the ground, where he bled and convulsed. Paul took the victim's wallet, and then he and defendant ran into A.L.'s house, where Paul changed his clothes.

The officers told defendant that they were investigating a different robbery, which had occurred on University Avenue and involved a Mexican victim who was hit with a pipe or shotgun and robbed of his wallet as he prepared to make a phone call. Defendant continued to deny any involvement in the Barajas robbery and reiterated that he had heard about it from Paul. The interview about the Barajas robbery ended.

A Palo Alto detective then interviewed defendant about Liu's robbery/homicide. Defendant stated, "About a week after Halloween, um, there was a murder that I was involved in, but didn't . . . do nothing. There was a Chinese man that was shot by . . . [Paul]." Defendant continued, "I didn't know he was going to be shot. It, it didn't happen the way it was supposed to." He explained, "I just thought he's just gonna beat him up and just go run through his pockets like he did all the other times."

The detective asked defendant to confirm that he had previously admitted that "[Paul] had conducted three separate robberies with you present where he'd done the same thing. He'd hit somebody and taken their property." Defendant said that was true. He then confirmed that he had been present, but not involved in, the Barajas robbery, the robbery of three people with a broken-down car, and the robbery of the two men in the car on Woodland. Defendant stated that Paul had not given him any of the proceeds from any of the robberies.

5

Defendant then provided information about the Liu robbery/homicide. He met Paul at about 4:30 p.m. They went to Paul's grandmother's house, where Paul obtained his gun. Paul told defendant that he wanted to do a robbery. They walked over to the Tanland Apartment complex, where they interacted with the high school student.

Defendant stated, "My understanding was, we's just supposed to pull a lick. Not hurt no one." He continued, "Not hurt anyone in no kind of way. Um . . . he . . . robbed somebody, the Chinese man. He beat him. While I was standing there watching, and then he just, shot him. Shot the uh, Chinese man. For no reason after he's already beat up. After he really had beat him up." Defendant indicated that he felt sorry that Liu had died. He expressed his wish that "it would of happened differently." He had not spoken with Paul since the homicide.

Defendant described what he was wearing at the time: a Miami hat and a gray and maroon derby coat, similar to a Raiders jacket. Paul was wearing all black clothing. After the shooting, he asked Paul why he had shot Liu. Paul replied that he "just did it." Paul did not give defendant any money from the robbery, or any of the items he took from Liu, which included a set of keys, a car alarm, and a wallet.

In a subsequent interview, defendant provided details about the Barajas robbery. He and Paul had been at A.L.'s house. Paul picked up a pipe and said, "I'm gonna try to find me a lick." They began to walk around the neighborhood, ending up at a video store on University Avenue. Paul had the pipe underneath his jacket. Barajas drove up in a pick-up truck, parked, and approached the telephone. Paul stated, "This is the lick." Defendant looked around "to make sure it was okay" and then said, "[I]t's cool." Paul walked up behind the victim and hit him in the head with the pipe several times. When the victim fell down, Paul looked through the pick-up truck and went through the victim's pockets. Paul and defendant then returned to A.L.'s house, where Paul changed his clothes.

6

Next, defendant provided information about the robbery of the three people with the broken-down car. He and Paul had been standing in front of A-1 Liquors on University Avenue. Paul, who was armed with a gun, believed the victims "probably had money." He walked up to them and told them to "break themselves." He then began "pistol whipping" the male. Paul went through the male's pockets and threatened the females with his gun.

The officers asked defendant what he was thinking when Paul committed the robberies and whether he had ever told Paul to stop. Defendant explained, "I can't stop him. Can't say nothing to him. . . . He gets a rush off. Violence is him. . . ." Defendant described an incident where Paul had beat up a "dope fiend that had ten dollars."

Defendant subsequently pled no contest to charges of assault with a deadly weapon and second degree robbery of Barajas. As part of a plea bargain, charges related to the University Avenue robbery were dropped.

Defendant presented evidence at trial. A professor testified on police tactics used to elicit a confession. Defendant's mother testified that defendant and defendant's girlfriend were watching videos at her house all day on the date of Liu's robbery/homicide. A defense investigator testified that she was unable to subpoena defendant's girlfriend for trial.

### B. *Procedural History*

#### 1. Trial Proceedings and Direct Appeal

A jury convicted defendant of first degree murder (§ 187), conspiracy to commit robbery (§ 182, subd. (a)(1)), and second degree robbery (§§ 211, 212.5, subd. (b)). The jury found true the special circumstance allegation that defendant committed the murder during a robbery (§ 190.2, subd. (a)(17)), and the allegation that a principal was armed with a firearm (§ 12022, subd. (d)) during the commission of the murder and the robbery. The superior court sentenced defendant to life without the possibility of parole, with a consecutive two-year term for the arming enhancement associated with the murder count.

7

Defendant contended on appeal that (1) his confession was coerced and should have been suppressed; (2) trial counsel was ineffective for failing to seek suppression of the confession on the ground that defendant's *Miranda* waiver was invalid because the police affirmatively misrepresented the scope of the interrogation; (3) the trial court erred by excluding a conversation between defendant and his girlfriend; (4) trial counsel was ineffective for failing to set forth additional grounds for the admission of defendant's conversation with his girlfriend and for failing to seek admission of a redacted version of the conversation; (5) the trial court erred by instructing the jury on reasonable doubt pursuant to CALJIC No. 2.90 (6th ed. 1996); and (6) the trial court erred by imposing a restitution fine pursuant to section 1202.45.

In 2000, this court ordered the restitution fine stricken and affirmed the judgment.

### 2. Habeas Proceedings

Defendant filed a petition for writ of habeas corpus, contending that there was insufficient evidence to support the special circumstance finding under *Banks*.[6]

The superior court denied the petition in 2017, analyzing the sufficiency of the evidence under *Banks* and *Clark* and determining that defendant's "conduct supported a special circumstance finding." Noting the factors discussed in *Banks* to determine whether a defendant's participation in the underlying crimes was " 'sufficiently significant to be considered "major," ' " the court determined that defendant was a major participant in Liu's robbery because he "beat Liu, conducted surveillance, and stood there and watched, while Paul shot and killed Liu." Regarding reckless indifference to human life, the court found defendant's "active participation in orchestrating the robbery, his knowledge of Paul's past violent behavior, and his own violent actions [during the

---

[6] Defendant also contended in his habeas petition that his LWOP sentence was disproportionate and unconstitutional.

robbery] demonstrate a finding of reckless indifference to human life," contrasting this case with *Banks* and *Clark*.

### 3. Section 1170.95 Proceedings

In 2021, defendant filed a section 1170.95 petition in the superior court. As relevant here, the petition stated that "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; he "could not now be convicted of 1st or 2nd degree murder because of changes made to . . . § § 188 and 189, effective January 1, 2019"; he "was not the actual killer"; he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; he "was not a major participant in the felony **or** . . . did not act with reckless indifference to human life during the course of the crime or felony"; and the victim was not a peace officer in the performance of his or her duties. Defendant requested counsel.

Following this court's decision in *People v. Drayton* (2020) 47 Cal.App.5th 965, 975-976 (*Drayton*), overruled in part by *People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*), the superior court denied the petition without appointing counsel, determining that "readily ascertainable facts from the record demonstrate that [defendant] is ineligible for [section 1170.95] relief as a matter of law." Recognizing the split in the Courts of Appeal regarding the preclusive effect of a pre-*Banks* and *Clark* felony-murder special circumstance finding, the court followed the cases that hold that a felony-murder special circumstance finding, including a finding made pre-*Banks* and *Clark*, bars section 1170.95 relief as a matter of law. The court further found, "That conclusion is even more appropriate given this particular record of conviction, where the felony murder special circumstance has been upheld by a court applying a post-*Banks* and *Clark* understanding of 'major participant' and 'reckless indifference to human life.' "

9

### III.    DISCUSSION

**A.    *Statutory Framework and the Standard of Review***

The Legislature enacted Senate Bill 1437 to "amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder.  (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).)  And section 189, subdivision (e), now limits liability for murder to a person who was either the actual killer or, though not the actual killer, acted "with intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder, or was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (Stats. 2018, ch. 1015, § 3; § 189, subd. (e).)

In addition to the amendments to sections 188 and 189, Senate Bill 1437 added section 1170.95.  (Stats. 2018, ch. 1015, § 4.)  As relevant here, section 1170.95 allows "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition the sentencing court to vacate the murder conviction and be resentenced on any remaining counts.  (§ 1170.95, subd. (a).)  All of the following conditions must apply to warrant section 1170.95 relief:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime"; "(2) The petitioner was convicted of murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder"; and "(3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

A section 1170.95 petition is required to include: "(A) A declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [And] [¶] (C) [w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) "[U]pon the filing of a facially sufficient petition," the statute "requir[es] that counsel be appointed." (*Lewis*, *supra*, 11 Cal.5th at p. 970.) "[T]hen the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Id*. at p. 960.)

"[T]he prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citations.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

11

We determine questions of statutory interpretation de novo. (See *Lewis*, *supra*, 11 Cal.5th at p. 961.)

**B.** ***The Felony-Murder Special Circumstance Statute and Banks and Clark***

An individual convicted of first degree murder may be sentenced to death or life without the possibility of parole if a special circumstance enumerated under section 190.2 is found true. "One such special circumstance is the felony-murder special circumstance. The requirements of the felony-murder special circumstance mirror the post-Senate Bill 1437 requirements of felony murder. [Citations.] That is, the felony-murder special circumstance applies where (1) the murder occurred during the commission of a specified felony and (2) the defendant was the actual killer; with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the murder; or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the felony. (§ 190.2, subds. (a)(17), (c), (d).)" (*People v. Pineda* (2021) 66 Cal.App.5th 792, 798 (*Pineda*), review granted Sept. 29, 2021, S270513.)

In *Banks* and *Clark*, the California Supreme Court "clarified the meaning of the special circumstances statute." (*In re Scoggins* (2020) 9 Cal.5th 667, 671.) In *Banks*, the court considered "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant" under section 190.2. (*Banks*, *supra*, 61 Cal.4th at p. 794.) The court held that "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder," and identified five factors relevant to that determination. (*Id.* at pp. 802, 803.) The factors are: (1) "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?"; (2) "What role did the defendant have in supplying or using lethal weapons?"; (3) "What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?"; (4) "Was the defendant present at the scene of the killing, in

12

a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?"; and (5) "What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

In *Clark*, the California Supreme Court held that reckless indifference to human life has "both subjective and objective elements." (*Clark*, *supra*, 63 Cal.4th at p. 617.) "The subjective element is the defendant's conscious disregard of [the grave] risks [of death] known to him or her." (*Ibid.*) As to the objective element, " '[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*Ibid.*) The court identified five factors relevant to whether the defendant acted with reckless indifference to human life under the totality of the circumstances. (*Id.* at pp. 618-622.) Those factors are: (1) the defendant's knowledge of weapons, the number of weapons, and whether the defendant used a weapon; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the underlying felony; (4) the defendant's knowledge of his or her cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of violence during the underlying felony. (*Ibid*.) "Just as [the court] said of the factors concerning major participant status in *Banks*, '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Id*. at p. 618.)

"A defendant with a pre-*Banks* and *Clark* felony-murder special-circumstance finding whose conviction became final prior to *Banks* and *Clark* may file a petition for habeas corpus seeking to have the finding invalidated. Such a defendant 'is entitled to habeas corpus relief " 'if there is no material dispute as to the facts relating to his conviction' " ' and 'the special circumstances statute as construed in *Banks* and *Clark*' did not prohibit his conduct." (*Pineda*, *supra*, 66 Cal.App.5th at p. 799.)

13

**C.** *The Superior Court's Failure to Appoint Counsel*

In *Lewis*, the California Supreme Court recently held that section 1170.95 requires "the appointment of counsel upon the filing of a facially sufficient petition (see § 1170.95, subds. (b), (c)) and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' (§ 1170.95, subd. (c).)" (*Lewis*, *supra*, 11 Cal.5th at p. 957.) It overruled the Courts of Appeal, including this court in *Drayton*, that held that section 1170.95 requires superior courts to conduct a two-step prima facie review, determining instead that section 1170.95, subdivision (c) "describe[s] only a single prima facie showing." (*Lewis*, *supra*, at p. 962.) Thus, if a petition complying with section 1170.95, subdivision (b)(1) is filed, "the court appoints counsel, if requested; the issue is briefed; and then the court makes [a] prima facie determination" of petitioner's eligibility for relief. (*Lewis*, *supra*, at p. 966, fn. omitted.)

Here, as the Attorney General concedes, the superior court erred when it denied defendant's petition by relying on the record of conviction without first appointing defendant counsel.

**D.** *The Failure to Appoint Counsel Was Harmless*

The California Supreme Court determined in *Lewis* that a superior court's failure to appoint counsel upon the filing of a facially sufficient section 1170.95 petition is state law error only that does not amount to structural error. (*Lewis*, *supra*, 11 Cal.5th at p. 973.) Thus, when a superior court has denied a facially sufficient petition at the prima facie stage without appointing counsel, the petitioner must " 'demonstrate there is a reasonable probability that in the absence of the error he [or she] would have obtained a more favorable result.' [Citations.]" (*Id.* at p. 974.)

The Courts of Appeal are divided on whether a pre-*Banks* and *Clark* felony-murder special circumstance finding prevents a defendant from demonstrating prima

14

facie entitlement to section 1170.95 relief (see *Pineda*, *supra*, 66 Cal.App.5th at pp. 799-801 [detailing the split]), and the issue is currently pending before the California Supreme Court (see *People v. Strong* (Dec. 18, 2020, C091162) __ Cal.App.5th __ [2020 Cal.App.Unpub.LEXIS 8505], review granted Mar. 10, 2021, S266606). In *Pineda*, this court followed the First District's determination in *People v. Secrease* (2021) 63 Cal.App.5th 231, 255 (*Secrease*) that when a defendant convicted of murder with a felony-murder special circumstance finding " 'has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level— section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute.' " (*Pineda*, *supra*, at p. 801.) Because the defendant in *Pineda* had never had a *Banks* and *Clark* sufficiency of the evidence review, this court remanded the matter to the superior court for it to determine at the prima facie stage of the section 1170.95 proceedings whether there was sufficient evidence in the record that defendant's conduct was proscribed by the felony-murder special circumstance statute as construed in *Banks* and *Clark*. (*Pineda*, *supra*, at pp. 801-802; see also *Secrease*, *supra*, at p. 264 [same].)

Unlike the defendants in *Pineda* and *Secrease*, defendant has had a *Banks* and *Clark* sufficiency of the evidence review of the felony-murder special circumstance finding. Specifically, the superior court in the habeas proceeding found when considering the factors discussed in *Banks* and *Clark* that "there is substantial evidence demonstrating that [defendant] was a 'major participant' in the Liu robbery" and that defendant's "active participation in orchestrating the robbery, his knowledge of Paul's past violent behavior, and his own violent actions demonstrate a finding of reckless indifference to human life." This finding forecloses defendant from establishing a prima facie case of entitlement to section 1170.95 relief because it refutes the allegation in defendant's petition that he could not currently be convicted of murder as he "was not a major participant in the felony **or** . . . did not act with reckless indifference to human life

15

during the course of the crime or felony." (See *Lewis*, 11 Cal.5th at p. 971; *Pineda*, *supra*, 66 Cal.App.5th at p. 798 ["[t]he requirements of the felony-murder special circumstance mirror the post-Senate Bill 1437 requirements of felony murder"]; *Secrease*, *supra*, 63 Cal.App.5th at p. 264 [a defendant is ineligible for section 1170.95 relief if there is sufficient evidence under *Banks* and *Clark* to support a felony-murder special circumstance finding].)

Defendant asserts that the superior court's finding of sufficiency under *Banks* and *Clark* "should not have any preclusive or determinative effect" in these proceedings because the habeas petition was "summarily denied" and the burden to establish a prima facie case in habeas proceedings is higher than the prima facie burden under section 1170.95. But "[t]he remedy the *Banks* and *Clark* decisions provide for [pre-*Banks* and *Clark*] special circumstance findings is not an evidentiary hearing but a form of substantial evidence review." (*People v. Price* (2021) 71 Cal.App.5th 1128, 1150, review granted Feb. 9, 2022, S272572.) Defendant received that review in the habeas proceeding, and he may not challenge the outcome here.

Because the record conclusively refutes defendant's allegation that he could not presently be convicted of murder, defendant cannot demonstrate that he was prejudiced by the superior court's failure to appoint counsel before relying on the record of conviction to deny the section 1170.95 petition. In other words, defendant cannot " 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' " (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

For these reasons, we conclude that the superior court's failure to appoint counsel was harmless and affirm the denial of the section 1170.95 petition.

## IV.   DISPOSITION

The superior court's order denying defendant's Penal Code section 1170.95 petition is affirmed.

16

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:


_____
GROVER, J.


_____
DANNER, J.


*People v. Pereles*
**H049218**